UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LIVIA LOCATELLI,<br><br>    Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. 2:22-cv-00014<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff Livia Locatelli filed this action under 42 U.S.C. § 405(g) and § 1383(c) seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (SSA) denying her applications for disabled adult child insurance benefits (DACIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) Locatelli has filed a motion for judgment on the administrative record (Doc. No. 23), to which the Acting Commissioner has responded in opposition (Doc. No. 28), and Locatelli has filed a reply (Doc. No. 30). Having considered the parties' arguments and the administrative record (Doc. No. 14) as a whole, the Magistrate Judge will recommend that the Court deny Locatelli's motion and affirm the Acting Commissioner's decision.

I.  Background

   A.  Locatelli's DACIB and SSI Applications

Locatelli filed two DACIB applications and one SSI application on January 29, 2019, at the age of twenty-one, alleging that she has been disabled since September 6, 2005, because of dyslexia and short-term memory issues. (AR 101–102, 113–14, 125–26.[1]) The Commissioner denied Locatelli's applications initially (AR 137–39) and the Acting Commissioner denied her applications on reconsideration (AR 185–87).[2] At Locatelli's request, an administrative law judge (ALJ) held a telephonic hearing regarding her applications on February 18, 2021. (AR 36–88, 221.) Locatelli appeared with counsel and testified. (AR 38, 52–57, 85–86.) The ALJ also heard testimony from Locatelli's mother (AR 58–75) and from a vocational expert (AR 76–84).

   B.  The ALJ's Findings

On March 17, 2021, the ALJ issued a written decision finding that Locatelli is not disabled within the meaning of the Social Security Act and applicable regulations and denying her claims for DACIB and SSI. (AR 15–35.) The ALJ made the following enumerated findings:

> 1.  Born on September 6, 1997, the claimant had not attained age 22 as of January 29, 2019, the application date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).
>
> 2.  The claimant has not engaged in substantial gainful activity since September 6, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\*   \*   \*

---

[1] The transcript of the administrative record (Doc. No. 14) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

[2] The Acting Commissioner was appointed to replace the former Commissioner on July 9, 2021. *See Soc. Sec. Admin.—Legality of Serv. of Acting Comm'r*, B-333543, 2022 WL 326059, at \*2 (Comp. Gen. Feb. 1, 2022).

3. The claimant has the following severe impairments: unspecified neurodevelopmental disorder, depression, generalized anxiety disorder, and attention deficit-hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: In terms of mental limitations, she is limited to the performance of simple and routine tasks, can only occasionally interact with the general public, can only occasionally interact with co-workers, but with no tandem or group tasks required, can occasionally interact with supervisors, and is limited to low-stress work, which I define as no fast-paced assembly line or strictly-monitored daily production quota requirements, and occasional changes in a routine work setting.

\* \* \*

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 6, 1997 and was 21 years old, which is defined as a younger individual age 18–49, on the application date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 6, 2005, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(AR 18–28.) The Social Security Appeals Council denied Locatelli's request for review on March 21, 2022, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1–6.)

### C. Appeal Under 42 U.S.C. § 405(g) and § 1383(c)(3)

Locatelli filed this action for review on May 20, 2022 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

Locatelli argues that the Court should remand her applications to the SSA for reconsideration because the ALJ violated SSA regulations by improperly evaluating the persuasiveness of state agency medical consultant Jenaan Khaleeli, Psy.D.'s mental residual functional capacity assessment. (Doc. No. 24.) The Acting Commissioner responds that the ALJ followed SSA regulations and that the ALJ's decision is supported by substantial record evidence. (Doc. No. 28.) Locatelli filed a reply. (Doc. No. 30.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

DACIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"[3] 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R.

---

[3] Title II of the Social Security Act is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). Section 402(d)(1) of Title II "provides that a child of an individual entitled to old age or disability insurance benefits is entitled to [DACIB] if [s]he is under a disability . . . which began before h[er] twenty-second birthday." *Behnam v. Comm'r of Soc. Sec.*, 594 F. Supp. 3d 877, 880 (E.D. Mich. 2022) (second and fourth alterations in original) (quoting *Jones v. Sec'y of Health & Hum. Servs.*, No. 89-1603, 1990 WL 17265, at *1 & n.1 (6th Cir. Feb. 27, 1990)); *see also* 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350(a). Title XVI of the Social Security Act "is a welfare program" that provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen*, 485 U.S. at 75.

§§ 404.1520(a)(2), 404.1520(a)(4), 416.920(a)(4); *see also Campbell v. Comm'r of Soc. Sec.*, Civ. No. 14-14455, 2015 WL 13742018, at *5 (E.D. Mich. Nov. 10, 2015) ("When determining if a child is entitled to child's insurance benefits, the five-step sequential evaluation process is used." (citing 20 C.F.R. §§ 404.1520(a)(2), 404.1520(a)(4))), *report and recommendation adopted*, 2016 WL 463314 (E.D. Mich. Feb. 8, 2016). For purposes of this case, the regulations governing disability determination for DACIB and SSI benefits are identical. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) ("The Commissioner's regulations governing the evaluation of disability for D[AC]IB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively[.]").

At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3

(M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. Analysis

Locatelli's sole argument in support of judgment on the administrative record is that the ALJ improperly evaluated medical evidence from state agency consultant Jenaan Khaleeli, Psy.D. (Doc. Nos. 24, 30.)

For DACIB and SSI claims filed on or after March 27, 2017, SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[4] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* §§ 404.1520c(b), 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical

---

[4] This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[5] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

Khaleeli completed a mental RFC assessment of Locatelli, at the state's request, during the initial review stage of Locatelli's DACIB and SSI applications.[6] (AR 101–12, 113–24, 125–36.) Khaleeli found that Locatelli has moderate limitations in her ability to "understand and remember detailed instructions"; "carry out detailed instructions"; "maintain attention and concentration for extended periods"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "interact appropriately with the general

---

[5] This differs from the regulations governing SSI claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[6] Khaleeli's mental RFC assessment appears in the initial level disability determination documents appended to the ALJ's written decision as Exhibits 1A, 2A, and 3A. (AR 30, 101–12, 113–24, 125–36.)

public"; "accept instructions and respond appropriately to criticism from supervisors"; "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; and "respond appropriately to changes in the work setting." (AR 108–10, 121–22, 132–34). Specifically, Khaleeli opined that:

> A. The claimant can understand and remember simple & low[-]level detailed instructions. The claimant cannot make independent decisions at a[n] executive level.
>
> B. The claimant can complete simple and low[-]level detailed tasks. The claimant can maintain attention and concentration for at least 2 hours. The claimant can complete a normal workday and work week without significant psychologically related interruptions, and perform at a consistent pace with some difficulty. Claimant would benefit from a familiar work routine and should avoid excessive workloads and multiple demands, as well as multiple changes in procedures.
>
> C. The claimant can interact appropriately with the general public on an occasional basis. The claimant can relate appropriately to peers, co-workers, supervisors and maintain socially appropriate behavior despite some periods of increased signs and symptoms. Contact with supervisors and co-workers should be no more than occasional. Feedback should be supportive.
>
> D. The claimant can adapt to infrequent changes within a work-environment. Changes in work duties should be introduced gradually. The claimant can tolerate travel in unfamiliar places, and can avoid hazards, make plans, and set realistic goals independently.

(AR 110, 122, 134.)

The ALJ's written decision does not address Khaleeli's assessment independently. Instead, the ALJ analyzed Khaleeli's mental RFC assessment with a mental RFC assessment completed by state agency medical consultant Sandip Sen, M.D., during the reconsideration stage of Locatelli's

DACIB and SSI applications.[7] (AR 23–24.) The ALJ referred to Khaleeli and Sen collectively as "state agency psychologists" and considered their assessments as a single "opinion":

> State agency psychologists opined the claimant has moderate limitation in understanding, remembering, and applying information, moderate restriction in social interaction, moderate difficulty with concentration, persistence, and pace, and moderate limitation with adaptation (Exhibits 1A, 2A, 3A, 7A, 8A, and 9A). Due to her learning impairment and difficulty in retaining new information, the claimant is limited to performing only simple, repetitive tasks on a consistent basis. The claimant is limited to superficial interactions with coworkers and supervisors along with minimal public interaction, due to history of difficulty with interpersonal interactions. The claimant is limited to a low stress work environment due to anxiety and depression symptoms. The claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods to carry out simple tasks, interact adequately with co-workers and supervisors on a limited basis and respond appropriately to minor changes in routine work settings.
>
> The opinion from state agency psychologists (Exhibits 1A, 2A, 3A, 7A, 8A, and 9A) is partially persuasive. These consultants did not describe this opinion in wholly vocationally relevant terms. For example, this opinion uses the term "limited basis" with respect to interaction with coworkers and supervisors. A vocationally relevant opinion would use the well-defined terms of either unlimited, frequent, occasionally, or less than occasionally. I find the evidence supports occasional interaction with the public, co-workers and supervisors. Giving the claimant some benefit of the doubt, I have also included no tandem nor group tasks and no production pace. Additionally, I have limited the claimant to no reading and not even simple math calculations to account for the alleged learning impairments. In sum, the mental residual functional capacity from these state agency mental health consultants is not wholly consistent with the evidence and is only somewhat persuasive.

(AR 23–24.)

Locatelli argues that the ALJ wrongly discounted Khaleeli's opinion for not using vocational terminology and that Khaleeli's phrasing was proper because Locatelli's counsel used

---

[7]     Sen's mental RFC assessment appears in the reconsideration level disability determination documents appended to the ALJ's written decision as Exhibits 7A, 8A, and 9A. (AR 30, 150–52, 165–67, 180–82.)

the same terminology when posing hypotheticals to the vocational expert and the vocational expert was able to respond to the hypotheticals. (Doc. No. 24.) This argument fails for two reasons.

First, the phrasing used to describe a claimant's abilities is important because, as the Acting Commissioner argues, SSA regulations require that an RFC articulate "the most" a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Khaleeli used the term "infrequent" to describe the kind of workplace changes to which Locatelli can adapt. (AR 110, 122, 134.) SSA regulations do not define "infrequent." *See Mitchell v. Berryhill*, No. 1:15-cv-168, 2017 WL 886494, at *5 (E.D. Tenn. Mar. 6, 2017); *Wearner ex rel. Wearner v. Comm'r of Soc. Sec.*, No. 1:18-cv-28, 2019 WL 1938820, at *9 (E.D. Tenn. Apr. 15, 2019), *report and recommendation adopted*, 2019 WL 1929924 (E.D Tenn. Apr. 30, 2019). Locatelli argues that the common meaning of "infrequent" is "rare" and that the ALJ's RFC finding that she can adapt to "occasional" changes in her work environment conflicts with Khaleeli's assessment and lacks the support of substantial record evidence.[8] (Doc. No. 24.)

Courts in this circuit have rejected Locatelli's argument that "infrequent" can only mean "rare" or "less than occasional" in the social security context. *See Mitchell*, 2017 WL 886494, at *5 (finding "no merit in" plaintiff's argument that ALJ erred by defining infrequent to mean something other than rare); *Wearner ex rel. Wearner*, 2019 WL 1938820, at *9–10 (rejecting plaintiff's argument that "'infrequent' can only be defined as less than occasional"). Indeed, one district court recently found that, "in this context, 'infrequent' [ ] is synonymous with [ ] 'occasional' . . . ." *Kevin A. v. Comm'r of Soc. Sec.*, No. 1:22-cv-307, 2023 WL 4545164, at *14 (S.D. Ohio July 14, 2023). The Court reasoned that, because SSA regulations "define[ ]

---

[8] Specifically, Locatelli argues that the "Merriam-Webster Dictionary defines infrequent as seldom happening or occurring: rare." (Doc. No. 24, PageID# 981 n.2 (citing merriam-webster.com/dictionary/infrequent).)

'occasionally' as 'occurring from very little up to one-third of the time[ ]'" and define "'[f]requent' . . . as 'occurring from one-third to two-thirds of the time[,]" infrequent means "occurring less than one-third of the time." *Id.* (quoting SSR 83-10, 1983 WL 31251, at *5, 6 (Jan. 1, 1983)).

Second, the hypotheticals that Locatelli's counsel posed to the vocational expert were much more restrictive than what Khaleeli opined. Thus, even though the vocational expert testified that some of Locatelli's counsel's hypotheticals would not have allowed Locatelli to work, that testimony is not relevant to Khaleeli's opinion. For example, Locatelli's counsel asked the vocational expert if an individual who "[n]eeds to have a familiar work routine" and "needs to avoid excessive workloads and multiple demands, as well as multiple changes in procedure" would also need to work in "a sheltered" environment; the vocational expert responded in the affirmative and confirmed that need for a sheltered or supported environment would eliminate gainful employment for Locatelli. (AR 81.) But Khaleeli opined that Locatelli "would benefit from a familiar work routine and should avoid excessive workloads and multiple demands, as well as multiple changes in procedures." (AR 110, 122, 134.) Khaleeli did not state that these limitations were mandatory for Locatelli to function in a work environment.

Locatelli's counsel also asked the vocational expert if there was "work at a simple level that would accommodate" an individual who could have only "rare or . . . no[ ] contact" with supervisors and co-workers. (AR 80, 81.) The vocational expert explained that "working in complete isolation from others is an extreme accommodation so . . . that would be some kind of sheltered or supported environment" that would eliminate gainful employment for Locatelli. (AR 81.) But Khaleeli stated that Locatelli's "[c]ontact with supervisors and co-workers should be no more than occasional" and "[f]eedback should be supportive." (AR 110, 122, 134.) As the Acting Commissioner argues, "[t]he word 'occasional' is a term of art" in the social security

context "meaning up to one-third of the time." (Doc. No. 28, PageID# 1004–1005 (citation omitted)); *see also* SSR 96-9p, 1996 WL 374185 (July 2, 1996) ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.").

Khaleeli did not opine that Locatelli has extreme limitations in her ability to interact with others in a workplace.[9] Rather, Khaleeli stated that Locatelli is moderately limited in her "ability to interact appropriately with the general public[,]" "to accept instructions and respond appropriately to criticism from supervisors[,]" and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes."[10] (AR 109, 121, 133.) Khaleeli stated that Locatelli's "[c]ontact with supervisors and co-workers should be no more than occasional" (AR 110, 122, 134), and the ALJ's RFC limits Locatelli to "occasional[ ] interact[ion] with co-workers . . . [and] with supervisors" with the added limitation that Locatelli not engage in "tandem or group tasks" (AR 21).

Locatelli's counsel asked the vocational expert if additional limitations that "work place changes should be rare and introduced gradually" and that "feedback from supervisors and coworkers has to be supportive in nature"—combined with the first two sets of limitations posed by counsel—"sound[ed] like a sheltered workshop to" the vocational expert, and the vocational expert responded in the affirmative. (AR 81.) Locatelli has not shown that this hypothetical accurately reflects Khaleeli's opinion that Locatelli "can adapt to infrequent changes within a

---

[9] Under SSA regulations, an "[e]xtreme limitation" in an area of mental functioning indicates that an individual is "not able to function . . . independently, appropriately, effectively, and on a sustained basis" in that area. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c).

[10] A "[m]oderate limitation" in an area of mental functioning indicates that an individual's "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c).

work-environment" and that "[c]hanges in work duties should be introduced gradually." (AR 110, 122, 134.)

Locatelli's reliance on *Hardy v. Commissioner of Social Security*, 554 F. Supp. 3d 900 (E.D. Mich. 2021), and *Gavre v. Commissioner of Social Security*, No. 3:20-cv-551, 2022 WL 798035 (W.D. Ky. Mar. 15, 2022), is misplaced. These cases stand for the proposition that SSA regulations "'require that the ALJ provide a coherent explanation of [her] reasoning[ ]'" and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Hardy*, 554 F. Supp. 3d at 906 (first alteration in original) (first quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021); and then quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021)); *see also Gavre*, 2022 WL 798035, at *2 (quoting *id.*). The ALJ provided a coherent explanation of his reasoning for adopting the mental functioning limitations in Locatelli's RFC and, in so doing, expressly addressed and largely incorporated Khaleeli's opined limitations.

Accordingly, Locatelli has not shown that the ALJ violated SSA regulations in considering Khaleeli's mental RFC assessment or that the ALJ's decision otherwise lacks the support of substantial record evidence.

### IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Locatelli's motion for judgment on the administrative record (Doc. No. 23) be DENIED and that the Acting Commissioner's decision denying her DACIB and SSI applications be AFFIRMED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt

of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 1st day of August, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge